People v Hillen (2025 NY Slip Op 25089)

[*1]

People v Hillen

2025 NY Slip Op 25089

Decided on April 11, 2025

Justice Court Of The Town Of Webster, Monroe County

DiSalvo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on April 11, 2025
Justice Court of the Town of Webster, Monroe County

The People of the State of New York

against
Todd C. Hillen, Defendant.

Case No. 24120011

Sandra Doorley, District Attorney, Monroe County (David A. Bird of Counsel), for plaintiff. 
James D. Doyle, Rochester, for defendant.

Thomas J. DiSalvo, J.

Facts of the Case.
On November 15, 2024 at approximately 11:00 P.M. Webster Police Officer Timothy Brewer responded to the Kwik Mart on Ridge Road in the Town of Webster for a possible larceny and fight. Upon his arrival at the scene he observed one truck, a black Ford F-150, in the parking lot. He went into the store to speak to the employee who had called 911 and reportedly was involved in an altercation with one of the males in the truck. It was further alleged that money had been stolen. After speaking to the store employee Officer Brewer then approached the truck and spoke to a male in the driver's seat of said vehicle, which was determined to be the defendant, Todd C. Hillen. The defendant then opened the driver's side door. At that point, Officer Brewer stated he then observed the defendant exhibiting various indicia of intoxication, such as bloodshot watery eyes, being unsteady and having a strong odor of alcoholic beverage emanating from his breath. He went on to state that he observed what appeared, based on his training, to be illegal narcotics in the pocket of the driver's side door of the truck. The circumstances referred to herein were gleaned from the Narrative attached to the CPL § 710.30 Notice.
Another Officer, namely Ethan Parrish, also arrived on the scene, whereupon he approached the said 2005 Ford F-150, which was the only truck in the parking lot. In Officer Parrish's Narrative also attached to the CPL § 710.30 Notice, he states that upon arrival at the parking lot he observed the defendant sitting in the driver's seat in the said truck. He stated that the vehicle did not have any keys in the ignition but the lights were active. He went on to say that the passenger seat was occupied by a Christopher Hillen a bald male wearing Carhartt overalls. The officer stated that he observed minor facial lacerations and dried blood on the defendant's face and hands. He indicated that the defendant told him that the injuries were incurred because he had fallen down at the American Legion Post. 
During that encounter Officer Parrish indicated that he observed the defendant to have slurred speech, bloodshot watery eyes, being unstable when standing and the odor of an alcoholic beverage emitting from his breath. The officer further stated that the defendant told [*2]him that he had driven from the Webster American Legion Post to the Kwik Mart. The Officer's Narrative provided that the defendant was asked to perform a series of standardized field sobriety tests. The results of those tests showed significant signs of intoxication. Officer Parrish further indicated that he observed in the vehicle an unmarked pill bottle which later was discovered to contain three Hydrocodone/acetaminophen pills, a schedule two controlled substance. The Narrative went on to state the defendant was transported to the Webster Police Department for processing where he allegedly continuously refused to submit to the Datamaster breath test after being given the commissioner's warnings.
Upon being arrested the defendant was charged with criminal possession of a controlled substance in the 7th degree, PL § 220.03 and common law driving while intoxicated, VTL § 1192 (3).He was issued an appearance ticket to appear in Webster Justice Court on December 11, 2024. However, the arraignment was adjourned to December 18, 2024. At that time the court was in possession of a Report of Refusal to Submit to a Chemical Test, which was executed by Officer Ethan Parrish on November 27, 2024. The court was prepared to suspend the defendant's driver license in accordance with that report pursuant to VTL § 1194 (2) (b) (1), which states that
"Where a person has been lawfully arrested for a suspected violation of VTL § 1192, VTL § 1194(2)(b)(1) provides, in pertinent part:
(b) Report of refusal. (1) If: (A) such person having been placed under arrest; or (B) after a breath [screening] test indicates the presence of alcohol in the person's system; . . . and having thereafter been requested to submit to such chemical test and having been informed that the person's license or permit to drive and any non-resident operating privilege shall be immediately suspended and subsequently revoked for refusal to submit to such chemical test or any portion thereof, whether or not the person is found guilty of the charge for which such person is arrested . . . , refuses to submit to such chemical test or any portion thereof, unless a court order has been granted pursuant to [VTL § 1194(3)], the test shall not be given and a written report of such refusal shall be immediately made by the police officer before whom such refusal was made." (Gerstenzang, Handling The DWI Case in New York § 41:36, at 257 [2024-2025 ed])]
However, defense counsel objected to the suspension of the defendant's driver license on the grounds that the defendant had not been lawfully arrested, which if true, would prohibit the court from proceeding with the suspension. The balance of the arraignment was adjourned to permit the court to consider defense counsel's motion. It was again adjourned to allow defense counsel the opportunity to provide the court with a letter brief addressing the issue of whether the defendant was lawfully arrested.[FN1]
Said letter brief was received by the court on March 27, 2025.
In that brief, defense counsel set out various reasons as to why in his opinion there was [*3]no probable cause to arrest the defendant for driving while intoxicated.They are as follows: the officers responded to a police radio call concerning an assault involving a black Chevy pick up truck; that upon arriving at the scene the defendant was observed by the officers sitting in the drivers seat of the 2005 black Ford F-150 pick up truck; that said vehicle was not running; there were no keys in the ignition; the defendant was not observed operating a motor vehicle by the officers; there is an alleged admission by the defendant that he drove to the convenience store location, but he did not say that he drove there as a driver or a passenger, since there was a second occupant of the truck.

Issues Presented.
Must the report of refusal set out reasonable cause to believe the defendant was driving in violation of VTL § 1192?
Was the Officer justified in stopping the defendant's parked vehicle?
Did the Officers have reasonable cause to believe the defendant had operated a motor vehicle in violation of VTL § 1192?

Legal Analysis.
Report of Refusal. The law requires that the report of refusal be presented to the court at the time of arraignment.[FN2]
The court herein was in fact provided with that report of refusal at the time of arraignment. VTL § 1194 (2) (b) (2) states in pertinent part
"The report of the police officer shall set forth reasonable grounds to believe such arrested person or such detained person under the age of twenty-one had been driving in violation of any subdivision of section eleven hundred ninety-two or eleven hundred ninety-two-a of this article, that said person had refused to submit to such chemical test, and that no chemical test was administered pursuant to the requirements of subdivision three of this section."
Thus if the arresting officer did not have reasonable grounds, i.e. reasonable cause to believe the defendant had violated a provision of VTL § 1192, a refusal to take the chemical test would not result in a temporary suspension of the defendant's driver license pursuant to VTL § 1194(2)(b)(3).

Stop of a Parked Vehicle.
Before determining whether the police had reasonable cause to request the defendant to take the chemical breath test, it must be determined if the police were justified in stopping the defendant's parked vehicle.
"The four levels of police intrusion, in increasing order of their intrusiveness on an individual's rights, are: the request for information, the common-law right of inquiry, the detainer (including a frisk for weapons), and the arrest. The greater the intrusion, the greater the corresponding justification must be, NY Const. Art. I, § 12—that is, the more information the police must have to justify their conduct. People v. Hollman, 79 NY2d 181, 581 N.Y.S.2d 619, 590 N.E.2d 204 (1992); People v. De Bour, 40 NY2d 210, 386 N.Y.S.2d 375, 352 N.E.2d 562 (1976)." (Muldon, Handling a Criminal Case in New York § 9:18 [October 2024 Update])
In this case the officers were investigating both a potential larceny and an assault that allegedly took place on the premises of the said Kwik Mart, wherein a truck was involved. As previously indicated the only truck in the parking lot was the one which was occupied by two individuals including the defendant. It has been held that the police may approach a private citizen for the purpose of requesting information "but there must be some articulable reason sufficient to justify the police action which was undertaken." (People v. De Bour 40 NY2d 210,213, 386 N.Y.S3d 375,378 [1976]). Under the facts presented herein, the police certainly had an articulable reason to approach and inquire of the occupants.
The Level 1 encounter between the police and the defendant led to a Level II encounter, to wit: a common-law right of inquiry based on the information gleaned from the appearance and behavior of the defendant. "When initially proper police conduct leads to the discovery of additional information, that information may justify an escalated police intrusion."[FN3]
That is what occurred herein. Specifically, the observations of the officers relative to the various physical indicia of intoxication exhibited by the defendant and the observation of the what appeared to be illegal drugs in the pocket of the driver's side door, justified the level three encounter of detaining the defendant, that is asking the defendant to perform the standardized sobriety tests. All that led to the level four encounter of the arrest of the defendant. Nevertheless, the question becomes was there reasonable cause to arrest the defendant for common law driving while intoxicated? 

Reasonable Cause.
CPL § 70.10 (2) states that
"'Reasonable cause to believe that a person has committed an offense' exists when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it. Except as otherwise provided in this chapter, such apparently reliable evidence may include or consist of hearsay."
In order to determine if there was reasonable cause to arrest the defendant for driving while intoxicated, the court must determine if the there was sufficient evidence that the defendant [*4]operated his vehicle in an intoxicated condition. It is established law that "The element of operation can be proven by circumstantial evidence (i.e., there need not be direct, eyewitness testimony that the defendant operated the vehicle)"[FN4]
Nevertheless, "In a DWI case, operation and intoxication must occur simultaneously."[FN5]

The case of People v. Sieber, 40 Misc 3d 133[A], 2013 N.Y.Slip Op. 51143[U] [2013], sets out facts similar to those of the instant case. In Sieber the Appellate Term, reversed the decision of the Justice Court of the Town of Woodbury, which had found after a hearing that the police did not have probable cause to arrest the defendant for common law and per se driving while intoxicated.[FN6]
The facts of that case are that
"On November 1, 2010, at about 3:55 a.m., having received a police radio report of a person sleeping in a vehicle in a parking lot, state troopers responded to the lot, which abutted a public road, and discovered defendant asleep in the rear seat of her automobile. The engine was running, and the keys were in the ignition. The troopers awakened defendant to determine her condition and immediately detected the strong odor of an alcoholic beverage. Upon exiting her vehicle, defendant, who exhibited several indicia of intoxication and ultimately failed three field sobriety tests, stated to the troopers that, earlier in the evening, she had consumed three glasses of wine at two different locations, the last at a restaurant in Middletown, New York, about 17 miles away, and that while en route to her New Jersey home, she had decided to stop in the parking lot to sleep. The troopers arrested defendant, and, after a chemical test revealed that defendant's blood alcohol content was .10 of one per centum by weight, defendant was charged in separate accusatory instruments with driving while intoxicated (per se) (Vehicle and Traffic Law § 1192[2] ) and driving while intoxicated (common law) (Vehicle and Traffic Law § 1192 [3] ), respectively."[FN7]
In reversing the lower court, the appellate court, citing evidence of intoxication and the admission of the defendant, stated that
"Although it is not known how long defendant was in the parking lot before the troopers first observed her, there is no rational explanation for her presence there other than that she was not at the starting point of her journey. In the absence of any evidence that defendant consumed an alcoholic beverage after she had stopped her vehicle, the only reasonable inference is that defendant's intoxicated state resulted from the consumption of alcoholic beverages prior to her arrival in the lot, and "' all inferences other than [recent] [*5]simultaneous operation and intoxication,'" at least for probable cause purposes, were effectively excluded"[FN8]
In this case the circumstantial evidence that the defendant had driven his vehicle while intoxicated included the defendant sitting in the driver seat of the vehicle; his admission of having driven the vehicle to the parking lot of the Kwik Mart from the Webster American Legion Post [FN9]
; the various physical indicia of intoxication exhibited by the defendant both while in the vehicle and outside the vehicle; the lack of evidence of having consumed any alcoholic beverage since arriving at the said parking lot; no indication that a significant period of time transpired between the time the defendant arrived at the parking lot and the arrival of the police officers: and his performance on the standardized field sobriety tests. Certainly there were no keys in the ignition. However the vehicle's lights were active. 

Conclusion.
Based on the totality of the circumstances this court must come to the same conclusion as did the Appellate Term in Sieber. Namely, that at least for probable cause purposes, the only reasonable inference is that defendant's impaired or intoxicated state resulted from the consumption of alcoholic beverages prior to his arrival in the parking lot and that the defendant operated his vehicle in violation of at least one subdivision of section eleven hundred ninety-two.[FN10]
Therefore the defendant's motion to preclude the court from temporarily suspending the driver license of the defendant pursuant to VTL § 1194(2)(b)(3) is hereby denied. The case is scheduled to return to the court's calendar on May 16, 2025 for the balance of the arraignment, where the defendant's license will be suspended as required by law.
The motion for a probable cause hearing relative to the arrest of the defendant for common law driving while intoxicated is summarily denied. For the reasons set out above, "the motion papers do not allege a ground constituting a legal basis for the motion."[FN11]
The motion for a Huntley hearing is hereby granted. (See also CPL. § 710.60 [4]) The court reserves on the remaining motions of the defendant.
This constitutes the decision and order of this court.
Dated: April 11, 2025
Hon. Thomas J. DiSalvo
Webster Town Justice

Footnotes

Footnote 1:("At arraignment in a refusal case, the court is required to temporarily suspend the defendant's driving privileges pending the outcome of a DMV refusal hearing. See VTL § 1194(2)(b)(3) ... the temporary license suspension imposed at arraignment in a refusal case lasts the shorter of 15 days or until the DMV refusal hearing." Id. at 259)

Footnote 2:(See VTL § 1194 [2] [b] [2])

Footnote 3:(Muldoon, Handling a Criminal Case in New York § 9:18 [October 2024 Update])

Footnote 4:(Gerstenzang, Handling the DWI Case in New York, § 2:10 at 122 [2024-2025 ed])

Footnote 5:(Id. § 2:6 at 114) 

Footnote 6:(Id. at *1)

Footnote 7:(Id.)

Footnote 8:(Id.)

Footnote 9:(Defense counsel argues that the admission of the defendant cannot be used to establish reasonable cause. He cites in support of his argument CPL § 60.50 which states "A person may not be convicted of any offense solely upon evidence of a confession or admission made by him without additional proof that the offense charged has been committed." Reliance on this statute is misplaced as it deals with the standard for conviction, which involves a much higher standard.)

Footnote 10:("The CPL uses the phrase 'reasonable cause' in lieu of the phrase 'probable cause.' See § 70.10 (2). It is well settled that '[r]easonable cause means probable cause'" Gerstenzang, Handling the DWI Case in New York, § 1:31 at 61 [2024-2025 ed])

Footnote 11:(See CPL § 710.70 [3] [a])